Good morning, and may it please the court. My name is Ed Swanson, and I represent appellant Elisa Lipkins, and I'd like to reserve two minutes of time for rebuttal. Your Honor, this case concerns a request for a forensic psychiatrist to be paid with funds for an appointed attorney to be used at sentencing. The court denied that request, and that denial was an error. It was an error because this is a very competent counsel with a paying client would have definitely acceded to. The counsel would have hired this expert, and Ms. Lipkins was prejudiced in this case because she didn't have the expert. Counsel, you've asked us to reverse it outright. The other side asked us to affirm it. I don't find it clear in the record that the trial judge, even though very experienced, applied the standard that our cases set forth. And so is the ruling in that sense adequate for us to review, or should we say where it's not obvious that the correct standard was applied or that any particular standard was applied, you win? I haven't articulated that question very well, but the judge basically said very little, except I don't think it's necessary to buy, and that really isn't the standard. So where does that leave us? Well, Your Honor, I think the court does have two options. The court could say we don't have a sufficient record before us, but I think the court could also say, based on what we now know, having heard the sentencing hearing, that it would have been an abuse of discretion under these circumstances to deny it, no matter what the court had found. So I think the court could, at this point, begin to consider the central issue with sentencing. The question was going to be, it was clear from the outset, is there an alternative to giving this defendant who had a lengthy criminal history more time in excess of the guidelines, and if so, what is that alternative? Well, all right. You have a PSR, and your client does certain things very well, and one of them is bank robberies. What she doesn't do very well is stay out of prison or out of jail because, wasn't it within 30 days that she went and robbed the same bank? Well, Your Honor, she was, she had been out for a matter of months at the time she did it, yes. And it was the same bank that she went to before? It was not a bank she'd robbed before, but it was a bank she was suspected in having attempted to rob before, yes. And, okay, could your client be characterized as a recidivist or a career criminal? Well, not a career criminal, but certainly a recidivist, Your Honor. That was the issue. That's why this was so important, because there's no question that on one side of the scale the Court was looking at, we had a well-developed criminal history of this individual. What the Court was looking for, what the Court was trying to weigh against that was, is there something else to consider here other than just giving her more time? Well, obviously from the standpoint of the Court, your client had a tragic life, and it would seem that the judge here, that no one is disputing that. It started very young. She'd been abused, and a lot of tragedy had befallen her. But there's also people that a lot of tragedy befalls them, that they don't continue to commit crime after crime after crime. And it seems that the judge was just at the point, I can't do anything else with you. Yes, you have a I can't let you out and continue to allow to victimize other people, and you need to be locked up until you're 50, or something like that, so that maybe at that time you won't be as capable of robbing banks at that point in time. And so I'm having trouble with the prejudice prong from the standpoint to, you know, people can have all the problems in the world, but we're not talking about that she didn't understand what was going on, but you just reach a point where I just can't, I can't risk you out in society, and why isn't that the case? And Your Honor, given the state of the record before the district judge, I think that conclusion was almost inevitable, because all the court knew was this individual has a long criminal history and a tragic past. What the court didn't have, and what we were seeking, was a diagnosis of her mental health issues. We knew she had mental health issues. She had been seeing on an outpatient basis, a social worker at a drug clinic. That person had identified she had serious mental health issues, but she had never had a forensic psychological report on it. Counsel, is there any evidence in the record that successful treatment of bipolar disease or manic depressive syndrome, as it used to be called, decreases criminality? Well, Your Honor, there's not, and that's exactly the problem here. This is where the prejudice prong in this context is particularly... By clearing, convincing evidence that this was prejudicial? Correct, Your Honor, and what the courts point out is that if that required us to have to prove... Did you put any declaration in from your psychiatrist at the motion to have him appointed at public expense as to the relevancy and need of the psychiatrist? We did have an application explaining the relevancy and need, but what we didn't have, Your Honor, was a diagnosis. Was there an application by the attorney, or was there an actual affidavit by the psychologist saying it's a well-known scientific fact that treatment under these circumstances will benefit the criminal? Your Honor, the question was we didn't know what the circumstances were. We had... The answer is no. The answer is no, but this goes directly to the prejudice issue that arises in the context of not being able to hire the expert in the first place. We knew there were mental health issues many years before she had been diagnosed as bipolar. Whether that was the issue now or not, we didn't know. To submit to the court in connection with our application what chances there would be of reducing recidivism if it turns out that the psychologist finds out that the mental health problem is X would have been really putting the cart before the horse. No, you would have gotten a... You would have seen a psychologist who would say, I've charged $300 an hour, and in order to get this job, I'll give you an affidavit saying that my testimony is relevant. But there was no such affidavit. There was no factual basis for that. Correct, Your Honor, and that... It was a counsel's representation. Counsel was saying, this is reasonably necessary because I am a member of the No, Your Honor. What there was submitted to the court was counsel's representation, that there appeared to be serious mental health issues, and a letter from the social worker who had seen her identifying serious mental health issues, but not diagnosing what those mental health issues were because she's not capable to. I'm not sure that the mental health issues had anything to do with the criminality and the treated criminality would decrease. So, Your Honor, what the courts say when it addresses the prejudice prong, this is not to ask that the defendants show that the outcome would have been different had we had the information. It's simply, could it have mattered? Right, could it have mattered? And what we knew is she had serious mental health issues. What we knew was the court wanted to know, is there an alternative to just adding more time to her sentence that might better protect the community? What we needed to do was get a psychiatrist who could see her, diagnose her, and give us a prognosis. And without that diagnosis, it's not for counsel to diagnose. I can't. And there's nothing in the record showing what the mental health issue was. We knew there was one. And I'll reserve the balance of my time. You may do that. May it please the Court. Good morning. Good morning. Nathaniel Cousins, Assistant U.S. Attorney on behalf of the United States. Counsel, do you agree that the standard for whether to appoint a defense expert in this circumstance is set by our case in Chase, that that is the governing case for sentencing defense experts? Well, there's, Chase does set forth the basic standard, Your Honor. Okay. But there's, of course, one distinction between Chase and this case. Okay. One thing at a time. So the basic standard is, if this were a paying defendant with a private lawyer, would competent counsel have chosen to get that particular expert? And so what I'd like for you to explain to me is two things. Number one, where do we see in the record that the district court understood that that was the standard that he was to apply? And second, why competent counsel would not have pursued further mental health information when that was really the only possible avenue to affect sentencing in this particular case? All right. Several components to your question. I'll try to break it down and respond. As far as what's in the record, we have just the one-page order, effectively, from the district court judge ruling on the application from Ms. Lipkins, which was made after sentencing. Or, excuse me, after Ms. Lipkins had pled guilty to the offense. And at the time, what we see from the record is that the court did, in its order, use the term that turned necessary and found that the appointment of a court-appointed psychologist was not necessary. Well, that's exactly my concern, because that's not what Chase says. Would a competent private lawyer with a paying client have done this? And I don't see where the district court applied that standard. Well, in other places, the Ninth Circuit has looked at, or viewing this as an abusive discretion standard, and has set forth a two-part test. And one is whether it was necessary to appoint an expert on behalf of the defense. And second is the prejudice prong, whether there was prejudice. Correct. There's also the principle established by the Supreme Court that a legal mistake is an abusive discretion. So if it appears that the district court applied an incorrect legal standard, why wouldn't that be a type of abusive discretion all by itself? Well, I disagree that there's anything on the record to demonstrate that the court made a legal mistake. The court did use the language of necessity in its ruling on the request by Ms. Lipkins. And, again, if we look at the sentencing hearing, Ms. Lipkins had an opportunity to assert any procedural errors in the process. And looking at that necessity prong, I think it's significant that the sentencing defense counsel did not assert that there was any impropriety in going ahead of the sentencing. And we can see that there was not necessity for this court-appointed psychologist by the fact that there's no question. Well, you keep going back to necessity. I would like to ask you under the Chase standard why we can tell that a competent private lawyer with a paying client would not have sought this additional information to try to influence the sentencing. Maybe not successfully, but it just seems to me that if you were in the world of a private paying client and no effort had been made, no psychiatrist had been consulted, you'd have a malpractice claim, you know, after you'd been sentenced. It just seems that the only possible argument this person had had to do with her mental health, because as Judge Callahan points out, she had just a lengthy, lengthy, lengthy criminal history. So this is basically all her lawyer had to work with. The reason that a private counsel would not have needed to hire a psychologist at sentencing is that the record was available to the court as to the defendant's mental history, and it was available to the court both at the time of the initial request and looking at the record. What did the district judge specifically have at the time that he denied the request? This is at ER 121 in the record, Your Honor. At the time of the request, the court had available to it the previous diagnosis of a bipolar disorder. How old was that diagnosis? That was disclosed in the report from the counselor made in the year before the proceedings here. So it was in the year before. I thought the diagnosis itself was much earlier. The diagnosis was earlier, but the report made by the counselor was in the ‑‑ and the treatment that was done by the counselor who was reporting it to counsel was in the year prior to the request. Okay. So there was no recent psychiatric diagnosis and no recent explanation of what treatment options might be available to assist. No. There was a recent analysis by the social worker who had cared for Ms. Lipkins while she was in custody. So that was one aspect of what the court had before it. So you think a competent lawyer would be satisfied with the social worker's old diagnosis? Well, there were a number of other components. The court was aware of the history of emotional, physical and sexual abuse at the time of the application. The court was aware of the defendant's criminal history, including the fact that she had had a 70‑month bank robbery sentence from 2004 that she had not completed at the time of this bank robbery. The court also had before it the fact that the defendant had completed a 500‑hour residential drug treatment program and had completed that. So these are all things that the court was aware of at the time it ruled on the application. And then at the time of sentencing, it had additional facts that were presented in the PSR by defense counsel and at the warden. But why are facts a substitute for expert analysis and opinion, where the issue is what kinds of dispositional options are open to a particular defendant who apparently has some kind of mental illness? And when that's the issue, you basically are saying, well, you have a lot of facts and you have some good lawyers who can argue about them. And it just seems to me that that's no substitute for the analysis of a knowledgeable expert, or at least that a competent lawyer with a paying client would have come to that conclusion, which is our test. Well, that's where you're getting into the prejudice aspect. And the defense does have the burden of proving by clearing commencing evidence the prejudice from the proceedings. And here there's just no dispute in the record as to what the facts are. The government did not dispute that the defendant had a diagnosis of bipolar disorder and depression. The government did not dispute and the court did not differ in any way that she had a long history of abuse and a challenging life. Well, I guess it seems like what the judge did. And the judge said, I don't usually like to go above the guidelines, but in so many words, if there was a picture in Wikipedia of someone that encompasses going above the guidelines, it was Ms. Lipkins here. And the judge basically, and right or wrong, the judge basically said, I mean, I'm reading between the lines. It's like it just doesn't matter anymore. You have all these problems, but I just can't let you out. You just can't keep victimizing people, and I've got to lock you up until you're 50. Is that kind of what was going on? Well, you're not just reading between the lines. The court did explicitly say at the sentencing it was weighing the dangers to the community. Judge Walker had the benefit. I mean, is that okay for a judge to do? The court is weighing all the factors under the sentencing guidelines and the 3553A, the danger to the community and also the needs of the defendant and her life history. He balanced all those together, and we are talking about a district court judge who's been on the bench for more than 20 years. How do we know, though, that that analysis would have been the same if there had been a favorable or helpful psychological report? Well, there's nothing in the record to demonstrate anything except for speculation that a psychological report would have been favorable. Well, this is the issue. I mean, and our cases have said this. This is the problem. When you don't allow someone to develop information and then you say, well, they don't have the information, so everything. It just seems backwards to me. Well, the Rodriguez-Lara case does make it tricky, and it's a balancing that the court exercises here, and that's what the court did below. It did have information on which to base its sentencing decision. It did have the social worker's report. Sure. Of course it had information. That's the point. But it didn't have additional information that the defense wanted to develop. This Court has never held, and no court has held, that an expert must be appointed to act. No, only if competent counsel would do it for a paying client. That's the standard. And I have yet to see where the district court applied that standard. I think it's inherent in the Court's decision, and you're right. The written decision is short. It just says that it was not reasonable or necessary to appoint a court-appointed psychologist for sentencing. But this is an experience. Should I say I'm out of time? If I may finish. Please. Inherent in that decision is that the court was exercising its discretion appropriately based on its experience on the bench, and for all those reasons, we ask the court here to affirm. Thank you very much. Thank you, counsel. Mr. Swanson, you have some rebuttal time remaining. Thank you, Your Honor. Mr. Swanson, wasn't Judge Walker simply saying no matter what a psychologist could say, no matter how difficult her life has been, we just don't want this woman out to rob banks again? Respectfully, Your Honor, no. What he said to the defendant when she stood up to give her elocution was this. The court said, I'm attempting to weigh the needs of society to be protected from further misconduct on your part with what might be a sentence that would assist you in bringing your life around and striking a new path. The district court was really struggling with this. It had all of the evidence that Judge Callahan has pointed out about the serious criminal conduct. It had facts about her history, but it had no evidence about her mental health condition, what kind of treatment she needed, what kind of difference that could make. The court did not take the bench and say, I'm done with this. I'm done with you. I've read your criminal history. I know there's nothing we can do. The court said the court struggled. It was a long sentencing hearing, and the court went back and forth repeatedly saying, I'm trying to figure out what the right thing to do is here. What we had was nothing to put inside the other side of the scale that addressed what would be the appropriate sentence other than more time. Yes, she has a tragic history. That doesn't mean she should do less time. She has a mental health condition that could be treated, that could reduce the chance of recidivism. That would mean ---- Where's the evidence that treatment for bipolar disease reduces the propensity to be a recidivist? Your Honor, we don't know that that was the mental health problem. That's what the attorney said in his representation for getting a psychologist appointed. But there was no evidence that that scientific fact exists. Correct. Because all we knew at the time of sentencing was she has a mental health problem. Many years before, diagnosed as bipolar. Is that the problem now? We don't know. And to say that ---- for counsel to say it's bipolar and here's what the outcome will be if we're treated when we don't even know what the mental health condition is without an expert would be premature and inappropriate. And, therefore, we could not submit that when we made our request because we didn't know. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate the helpful arguments from both counsel.
judges: Graber, Callahan, Bea